USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED:  08/2/2017

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

-----------------------------------------------------------------------X
              :

KASHAWN DOBBINS,            :

            :          15-CV-3091 (JMF)

         Plaintiff,     :

            :        OPINON AND ORDER

     -v-           :

COMMISSIONER JOSEPH PONTE et al.,  :

            :

        Defendants.    :

            :

-----------------------------------------------------------------------X

JESSE M. FURMAN, United States District Judge:

     Plaintiff Kashawn Dobbins, a New York State prisoner proceeding *pro se*, brings claims against the City of New York (the "City"), several New York City Department of Correction ("DOC") officers, and a DOC Hearing Officer.  (Docket No. 22 ("Second Am. Compl.")).  Specifically, Dobbins alleges that he was subjected to the use of excessive force, that his Fourteenth Amendment due process rights were violated, and that he was denied necessary medical treatment.  (*Id.* at 2-4).  The parties now cross-move, pursuant to Rule 56 of the Federal Rules of Civil Procedure, for summary judgment.  (Docket No. 53; Docket No. 55 ("Defs.' Mem."); Docket No. 58 ("Pl.'s Mem.")).  Additionally, Dobbins moves for leave to amend his complaint to add claims against another DOC Officer.  For the reasons discussed below, Defendants' motion for summary judgment is granted in part and denied in part, Dobbins's motion for summary judgment is denied, and his motion for leave to amend is denied.

# BACKGROUND

The relevant facts, taken from the Second Amended Complaint and admissible materials submitted by the parties, are either undisputed or described in the light most favorable to the non-moving party. *See Costello v. City of Burlington*, 632 F.3d 41, 45 (2d Cir. 2011).[1]

In early 2014, Dobbins was in pretrial custody at the Otis Bantum Correction Center ("OBCC"), a DOC facility on Rikers Island. (Second Am. Compl. 2; Docket No. 54-1 ("First Am. Compl."), at 2). On the evening of February 1, 2014, DOC Officers from the Emergency Services Unit ("ESU") conducted a search of Dobbins's housing area and cell. (Second Am. Compl. 2; Defs.' Mem. 2). During the search, Officer Rivera — a Defendant here — escorted Dobbins to his cell and began to search his person. (Defs.' Mem. 2). Officer Rivera came to believe that Dobbins was hiding something in his mouth and ordered him to spit it out. (*Id.* at 2-3). Defendants allege that Dobbins refused and that Officer Rivera, soon assisted by Officer

---

[1]     As required by Local Rule 56.1, Defendants filed a Statement of Undisputed Facts with citations to the record. (Docket No. 57 ("Defs.' Rule 56.1 SUF")). Pursuant to Local Rule 56.2, they also served Dobbins with notice that, in opposing their motion, he could not rely only on his Complaint, but had to submit evidence to support his claims. (Docket No. 56). Dobbins, however, did not file his own statement of undisputed facts; instead, he submitted a ten-page "Opposition" (Docket No. 61 ("Pl.'s Opp'n")), and a seven-page letter requesting summary judgment and leave to amend his complaint. (Pl.'s Mem.). Nevertheless, in light of the "special solicitude" owed to *pro se* litigants, *Tracy v. Freshwater*, 623 F.3d 90, 101 (2d Cir. 2010), the Court has considered the evidence submitted by Dobbins — as well as the transcript of his deposition, which was submitted by Defendants. *See Wali v. One Source Co.*, 678 F. Supp. 2d 170, 178 (S.D.N.Y. 2009) ("[W]here a *pro se* plaintiff fails to submit a proper Rule 56.1 statement in opposition to a summary judgment motion, the Court retains some discretion to consider the substance of the plaintiff's arguments, where actually supported by evidentiary submissions."). Additionally, the Court has independently reviewed Defendants' Local Rule 56.1 statement to ensure that it is supported by admissible evidence in the record. *See Giannullo v. City of New York*, 322 F.3d 139, 140 (2d Cir. 2003) ("[E]ven [if] plaintiff's Rule 56.1 counter-statement failed to specifically controvert [defendant's Rule 56.1] assertions, the unsupported assertions must nonetheless be disregarded and the record independently reviewed."); *Holtz v. Rockefeller & Co.*, 258 F.3d 62, 73 (2d Cir. 2001) (noting that a court "may in its discretion opt to conduct an assiduous review of the record even where one of the parties has failed to file" a Local Rule 56.1 statement (internal quotation marks omitted)).

Ortiz, began struggling with Dobbins to place him in handcuffs. (*Id.* at 3). Dobbins contends that after he turned around to be handcuffed, one of the Officers "slammed" him "on the bed," choked him, and hit him "about three times" in the ribs. (Docket No. 54-2 ("Dobbins Depo."), at 32-38). He alleges that he suffered injuries to his wrist, back, and ribs as a result. (*Id.* at 32).

Officers Boyd and Richardson — Defendants here as well — then removed Dobbins from his cell and escorted him out of the housing area, events that were captured on videotape by DOC personnel. (Docket No. 54-3 ("Video")). The videotape shows Officers Boyd and Richardson forcefully holding Dobbins's handcuffed arms behind him in what Defendants describe as "control holds . . . to gain his compliance" and "to ensure that [he] did not escape them and run." (*Id.* at 21:10-22:35; Docket No. 57 ("Defs' Rule 56.1 SUF") ¶¶ 7-8). On the videotape, Dobbins is heard screaming "I'm not resisting nothing!" and, at one point, looks directly at the camera and says: "For the camera, they're breaking my wrists, seriously!" (Video 21:51-53). The officers then took him to a hallway right outside the housing area, where they secured him facing a wall for a few minutes, during which he continued to yell "My wrist!" and the like. (*Id.* at 22:05-25:34). The videotape then shows a group of officers escorting Dobbins away from the housing area, apparently to the intake unit. (*Id.* at 26:28-27:10). Notably, in his deposition, Dobbins testified that he was not "touch[ed]" by any officer on his way to intake, that it was "just walking and probably like holding me and making sure I don't run or something like that, and holding me while I am being handcuffed." (Dobbins Depo. 68-69).

In the intake unit, Dobbins was strip-searched by Officer Richardson. (Docket No. 54-8 ("Richardson Report")). Dobbins alleges that during the course of the strip-search — which was not captured by the camera, even though the videotape continued to run — Officer Richardson punched him until he was knocked unconscious and that he awoke bleeding from the head.

(Second Am. Compl. 3). Defendants do not dispute that Officer Richardson punched Dobbins, or that the latter was knocked unconscious, but insist that Officer Richardson defended himself after Dobbins "threw the first punch." (Defs.' Mem. 4; Richardson Report). Later the same day, Dobbins received medical treatment for a three-centimeter laceration to the right side of his scalp and a contusion to his left eye. (Docket No. 54-11 ("Feb. 1, 2014 Medical Records")). The records from that visit specifically note the absence of any "neck pain." (*Id.*). One week later, Dobbins returned to the OBCC medical clinic complaining of "chest discomfort" and "hand pain," citing the February 1, 2014 incident. (Docket No. 54-12 ("Feb. 8, 2014 and Feb. 12, 2014 Medical Records")). He received treatment for an abrasion on his right wrist. (*Id.*).

Defendants allege that during the search, a small plastic bag was found outside of Dobbins's cell, the contents of which later tested positive for crack cocaine. (Docket No. 54-13). On February 4, 2017, Dobbins received a notice charging him with three disciplinary infractions: assaulting staff, possession of a controlled substance, and refusing to obey a direct order. (Docket No. 54-15 ("Notice of Infraction")). Three days later, Hearing Officer Wiley — also a Defendant here — conducted a hearing. (Docket No. 54-18 ("Hearing Tr."), at 1). Despite repeated requests, Dobbins was not permitted to review any of the Officers' statements or other paperwork that was read into the hearing record. (Hearing Tr. 8-11). He was, however, allowed to call two witnesses. (*Id*. at 12-21). Following the hearing, Hearing Officer Wiley found Dobbins guilty of all three infractions and sentenced him to seventy days in the Central Punitive Segregation Unit ("CPSU"). (Docket No. 54-19 ("Disciplinary Disposition Notice")). Thereafter, the Bronx County District Attorney's Office prosecuted Dobbins for the substance recovered during the February 1, 2014 search. (Docket No. 54-21). On September 30, 2014, Dobbins pleaded guilty to one count of Promoting Prison Contraband in violation of New York

Penal Law Section 205.20, and was sentenced to one year of imprisonment, to be served concurrently with his underlying sentence. (*Id.*).

After exhausting the prison grievance procedures, Dobbins filed this action, naming as Defendants the DOC, the Commissioner of DOC, the Warden of OBCC, several named and unnamed DOC officers, and medical staff ("to[sic] many to name.") (First Am. Compl. 1). By Order dated May 4, 2015, this Court dismissed the claims against the DOC, the OBCC Warden, the DOC Commissioner, and medical staff for pleading deficiencies. (Docket No. 6 ("Order of Service")). The Court also construed the Complaint to assert state law claims against the City under a theory of *respondeat superior*, but dismissed any claim against the City pursuant to *Monell v. Department of Social Services*, 436 U.S. 658, 694 (1978). (Order of Service 2-3). Thereafter, Dobbins filed the operative complaint, the Second Amended Complaint, naming as Defendants the City; DOC Officers Ortiz, Rivera, Boyd, and Richardson; and Hearing Officer Wiley. (Docket No. 22).[2] Liberally construed, the Second Amended Complaint asserts against the DOC Officers or Hearing Officer Wiley claims under state and federal law for excessive force, violations of due process, and the deprivation of medical treatment; and asserts against the City a *respondeat superior* claim under state law. (*Id.*).[3]

---

[2] In a letter dated October 18, 2016, Dobbins requested that the Court "accept" his Second Amended Complaint, and referenced the document filed on August 5, 2015. (Docket No. 65). Attached to the letter, however, was another complaint — also labelled "Second Amended Complaint" — that is identical in substance, if not form, to that filed on August 5, 2015. For the purposes of this Opinion, the Court will treat the Second Amended Complaint filed on August 5, 2015, rather than the attachment to the October 18, 2016 letter, to be the operative complaint.

[3] It is not entirely clear whether Dobbins repleads a municipal liability claim against the City in the Second Amended Complaint. To the extent he does, however, it fails for the same reason that his earlier claim failed: He does not sufficiently plead the existence of an unconstitutional policy or practice. *See, e.g.*, *Bd. of Cnty. Comm'rs of Bryan Cnty., Okla. v. Brown*, 520 U.S. 397, 404 (1997) ("It is not enough for a § 1983 plaintiff merely to identify

## LEGAL STANDARDS

Summary judgment is appropriate where the admissible evidence and the pleadings demonstrate "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Johnson v. Killian*, 680 F.3d 234, 236 (2d Cir. 2012) (per curiam). A dispute over an issue of material fact qualifies as genuine "if the evidence is such that a reasonable jury could return a judgment for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *accord Roe v. City of Waterbury*, 542 F.3d 31, 35 (2d Cir. 2008). The moving party bears the initial burden of demonstrating the absence of a genuine issue of material fact. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). "In moving for summary judgment against a party who will bear the ultimate burden of proof at trial, the movant's burden will be satisfied if he can point to an absence of evidence to support an essential element of the nonmoving party's claim." *Goenaga v. March of Dimes Birth Defects Found.*, 51 F.3d 14, 18 (2d Cir. 1995) (citing *Celotex*, 477 U.S. at 322-23); *accord PepsiCo, Inc. v. Coca-Cola Co.*, 315 F.3d 101, 105 (2d Cir. 2002) (per curiam).

In ruling on a motion for summary judgment, all evidence must be viewed "in the light most favorable to the non-moving party," *Overton v. N.Y. State Div. of Military & Naval Affairs*, 373 F.3d 83, 89 (2d Cir. 2004), and the court must "resolve all ambiguities and draw all permissible factual inferences in favor of the party against whom summary judgment is sought," *Sec. Ins. Co. of Hartford v. Old Dominion Freight Line, Inc.*, 391 F.3d 77, 83 (2d Cir. 2004). When, as in this case, both sides move for summary judgment, the district court is "required to assess each motion on its own merits and to view the evidence in the light most favorable to the

conduct properly attributable to the municipality. The plaintiff must also demonstrate that, through its deliberate conduct, the municipality was the 'moving force' behind the injury alleged." (internal quotation marks omitted)).

party opposing the motion, drawing all reasonable inferences in favor of that party." *Wachovia Bank, Nat'l Ass'n v. VCG Special Opportunities Master Fund, Ltd.*, 661 F.3d 164, 171 (2d Cir. 2011). Thus, "neither side is barred from asserting that there are issues of fact, sufficient to prevent the entry of judgment, as a matter of law, against it." *Heublein, Inc. v. United States*, 996 F.2d 1455, 1461 (2d Cir. 1993).

To defeat a motion for summary judgment, a non-moving party must advance more than a "scintilla of evidence," *Anderson*, 477 U.S. at 252, and demonstrate more than "some metaphysical doubt as to the material facts," *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). The non-moving party "cannot defeat the motion by relying on the allegations in [its] pleading or on conclusory statements, or on mere assertions that affidavits supporting the motion are not credible." *Gottlieb v. Cnty. of Orange*, 84 F.3d 511, 518 (2d Cir. 1996) (citation omitted). Affidavits submitted in support of, or opposition to, summary judgment must be based on personal knowledge, must "set forth such facts as would be admissible in evidence," and must show "that the affiant is competent to testify to the matters stated therein." *Patterson v. Cnty. of Oneida*, 375 F.3d 206, 219 (2d Cir. 2004) (quoting Fed. R. Civ. P. 56(e)).

It is well established that courts must give "special solicitude" to *pro se* litigants in connection with motions for summary judgment. *Tracy*, 623 F.3d at 101. Thus, a *pro se* party's papers opposing summary judgment are to be read liberally and interpreted to raise the strongest arguments that they suggest. *See, e.g.*, *Clinton v. Oppenheimer & Co. Inc.*, 824 F. Supp. 2d 476, 481 (S.D.N.Y. 2011). This special solicitude is not unlimited, however, and does not "relieve" a plaintiff of his or her "duty to meet the requirements necessary to defeat a motion for summary judgment." *Jorgensen v. Epic/Sony Records*, 351 F.3d 46, 50 (2d Cir. 2003) (internal quotation marks omitted). Nor is the "duty to liberally construe a plaintiff's opposition the equivalent of a

duty to re-write it." *Johnson v. N.Y.C. Dep't of Correction*, No. 14-CV-8450 (JMF), 2016 WL

4030854, at *2 (S.D.N.Y. July 25, 2016) (internal quotation marks and alterations omitted).

## THE CROSS-MOTIONS FOR SUMMARY JUDGMENT

Defendants move for summary judgment on each of Dobbins's claims. Liberally

construed, Dobbins's motion appears to seek summary judgment on his excessive force and due

process claims. (Pl.'s Mem. 1-5). The Court will address each claim in turn.

## A. Excessive Use of Force

Dobbins's excessive force claim is analyzed under the Due Process Clause of the

Fourteenth Amendment, as he was a pretrial detainee at the time of the alleged incident. *See,*

*e.g.*, *Holland v. City of New York*, 197 F. Supp. 3d 529, 545 (S.D.N.Y. 2016). For a pretrial

detainee to establish an excessive force claim, he "must show only that the force purposely or

knowingly used against him was objectively unreasonable." *Kingsley v. Hendrickson*, 135 S. Ct.

2466, 2473 (2015). To be unreasonable, the conduct at issue — judged "from the perspective

and with the knowledge of the defendant officer[s]," *id.* at 2474, and evaluated "in light of

contemporary standards of decency," *Wright v. Goord*, 554 F.3d 255, 268 (2d Cir. 2009)

(internal quotation marks omitted) — must be "sufficiently serious . . . to reach constitutional

dimensions," *Romano v. Howarth*, 998 F.2d 101, 105 (2d Cir. 1993) (internal quotation marks

omitted). A court may consider, among other factors, "the relationship between the need for the

use of force and the amount of force used; the extent of the plaintiff's injury; any effort made by

the officer to temper or to limit the amount of force; the severity of the security problem at issue;

the threat reasonably perceived by the officer; and whether the plaintiff was actively resisting."

*Kingsley*, 135 S. Ct. at 2473 (citing *Graham v. Connor*, 490 U.S. 386, 396 (1989)); *see also*

*Musaid v. Manka*, No. 13-CV-7880 (PKC) (MHD), 2016 WL 540806, at *4 (S.D.N.Y. Feb. 9, 2016) (applying this analysis).[4]

Applying those standards here, the parties' cross-motions for summary judgment are borderline frivolous to the extent they relate to the incident in Dobbins's cell and in the intake unit. As to the former, there is a clear factual dispute: Defendants maintain that Officers Rivera and Ortiz used only the force necessary to restrain Dobbins, who resisted an order to reveal what was in his mouth, while Dobbins contends that the Officers body slammed, choked, and punched him — conduct that would be objectively unreasonable even if Dobbins had resisted a lawful order. (Defs.' Mem. 9-10; Dobbins Depo. 33-34, 37). Defendants contend that "no reasonable juror could credit Plaintiff's version" of the event because his allegations are "contradicted by Plaintiff's medical records." (Defs.' Mem. 11). But putting aside the question of whether the Court could grant summary judgment on that basis, it is not the case. Dobbins sought additional medical treatment only one week after the incident, complaining of "chest discomfort" and "hand pain," and he was treated for an abrasion on his right wrist. (Feb. 8, 2014 and Feb. 12, 2014 Medical Records). The fact that Dobbins sought additional treatment "only . . . once, more than one week after the Incident" (Defs.' Mem. 11), and the fact that he was not diagnosed with serious injuries at any time, may well cast doubt on the veracity of Dobbins's claims. But those are factual issues of credibility for a jury to decide at trial, not for the Court on summary judgment.

---

[4]      To the extent Dobbins also alleges claims for battery and assault under state law, those claims are subject to the same standard as his excessive force claim. *See Green v. City of Mount Vernon*, 96 F. Supp. 3d 263, 295 (S.D.N.Y. 2015) ("Assault and battery claims, when alleged against a police officer, are evaluated like excessive force claims.").

As for the incident in the intake unit, the factual disputes are even more transparent. According to Defendants, Dobbins initiated the physical alteration when he "threw a punch at Officer Richardson," "[struck] him in the shoulder," and "simultaneously rais[ed] his hands in a fighting stance." (Docket No. 54-4; *see also* Richardson Report). Defendants maintain that Richardson's punches were thus necessary to defend himself "from imminent physical assault." (Richardson Report). By contrast, Dobbins claims that Richardson threatened him during the walk to the intake unit and then punched him in the face at the end of the strip search, without reason or provocation. (Dobbins Depo. 75-76). Defendants assert that "the majority of evidence supports" their version of the incident. (Defs.' Mem. 14). But whether or not that is true, it is "axiomatic" that courts may not assess credibility or weigh the evidence on summary judgment, except in limited circumstances where the "evidence is so contradictory and fanciful that it cannot be believed by a reasonable person" and thus "may be disregarded." *Jeffreys v. Rossi*, 275 F. Supp. 2d 463, 476-77 (S.D.N.Y. 2003). Drawing all inferences in the non-moving party's or parties' favor, the Court cannot say that either side's account of the incidents in Dobbins's cell and in the intake unit cannot be believed by a reasonable person. Accordingly, summary judgment must be and is denied as to those incidents.[5]

---

[5] Defendants' argument that they are entitled to qualified immunity fares no better as to the incidents in Dobbins's cell and in the intake unit. (Defs.' Mem. 15-18). As a general matter, qualified immunity protects government officials from civil liability "insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). On February 1, 2014, it was well established that the Constitution prohibited corrections officers from using objectively unreasonable force against pretrial detainees. *See, e.g., Toliver v. City of New York*, 530 F. App'x 90, 92 n.1 (2d Cir 2013); *Caiozzo v. Koreman*, 581 F.3d 63, 72 (2d Cir. 2009), *overruled on other grounds by Darnell v. Pineiro*, 849 F.3d 17, 33-35 (2d Cir. 2017). Thus, if Dobbins's accounts of the two incidents are true, Defendants would not be entitled to immunity.

By contrast, to the extent Dobbins asserts an excessive force claim with respect to the conduct of the officers who escorted him from his cell to the intake unit, it fails as a matter of law. As an initial matter, it is not clear whether Dobbins even asserts a claim as to that conduct. Although the Second Amended Complaint refers to "the walk out of the cell," it is not clear whether the conduct it describes took place in the cell or after. (Second Am. Compl. 2-3). And in his deposition, Dobbins testified that he was not "touch[ed]" by any officer on his way to intake, that it was "just walking and probably like holding me and making sure I don't run or something like that, and holding me while I am being handcuffed." (Dobbins Depo. 68-69). In any event, the period during which Dobbins was transferred from his cell to the intake unit was the one and only part of the February 1, 2014 events that was captured entirely on video, and the video makes clear that the force used to restrain Dobbins was not "objectively unreasonable." *Kingsley*, 135 S. Ct. at 2473. Dobbins was indisputably acting in a belligerent and defiant manner, and — "account[ing] for the 'legitimate interests that stem from [the government's] need to manage the facility in which the individual is detained,'" and "appropriately deferring to 'policies and practices that in th[e] judgment' of jail officials 'are needed to preserve internal order and discipline and to maintain institutional security,'" *id.* (quoting *Bell v. Wolfish,* 441 U.S. 520, 540 (1979)) — no reasonable jury could conclude that the force used was "sufficiently serious . . . to reach constitutional dimensions." *Romano*, 998 F.2d at 105 (internal quotation marks omitted).

**B. Due Process**

Dobbins's due process claim can be addressed more swiftly. As a pretrial detainee, Dobbins was entitled under the Due Process Clause of the Fourteenth Amendment to (1) written notice of the charges against him at least twenty-four hours before the hearing, (2) a written

statement of the factual allegations against him, and (3) at least a limited ability to present witnesses and evidence. *See Best v. N.Y.C. Dep't of Correction*, 14 F. Supp. 3d 341, 347-48 (S.D.N.Y. 2014) (citing *Wolff v. McDonnell*, 418 U.S. 539 (1974)). Here, all three of those requirements were indisputably met. He was provided with written notice of the charges against him — assaulting staff, possession of controlled substances, and refusing to obey a direct order — on February 4, 2014, three days before his disciplinary hearing was held. (Defs.' Mem. 7; Notice of Infraction; Dobbins Depo. 91). The document included a statement (titled "Details of Incident"), derived from Officer Richardson's account of what had occurred, that sufficed to put Dobbins on notice of the factual allegations against him — even without the more complete reports and "paperwork" that he later requested. *See Dawkins v. Gonyea*, 646 F. Supp. 2d 594, 607-08 (S.D.N.Y. 2009) (discussing adequate notice). And finally, Dobbins was allowed to call two witnesses to testify at the hearing (Hearing Tr. 10, 12-21), although he himself was not permitted to question them. *See e.g.*, *Bullock v. Reckenwald*, No. 15-CV-5255 (LTS) (DF), 2016 WL 5793974, at *11-14 (S.D.N.Y. Aug. 24, 2016), *report and recommendation adopted*, No. 15-CV-5255 (LTS) (DF), 2016 WL 5719786 (S.D.N.Y. Sept. 30, 2016); *Sowell v. Bullis*, No. 13-CV-1482 (GLS) (DJS), 2016 WL 1696454, at *9 (N.D.N.Y. Mar. 25, 2016), *report and recommendation adopted*, No. 13-CV-1482 (GLS) (DJS), 2016 WL 1700410 (N.D.N.Y. Apr. 27, 2016).

Liberally construed, the Second Amended Complaint also includes allegations that Hearing Officer Wiley was biased and "conducted an unfair hearing by [siding] with coworkers to cover up wrong doings." (First Am. Compl. 9; *see also* Second Am. Compl. 11; Pl.'s Opp'n 39). An inmate facing a disciplinary hearing is entitled to an impartial hearing officer who does not "prejudge the evidence" or an inmate's guilt. *Patterson v. Coughlin*, 905 F.2d 564, 569-70

(2d Cir. 1990) (citing *Wolff*, 418 U.S. at 570-71). But a claim of hearing officer bias requires more than an inmate's own subjective beliefs and conclusory allegations. *See Brooks v. Prack*, 77 F. Supp. 3d 301, 316 (W.D.N.Y. 2014) (citing *Francis v. Coughlin*, 891 F.2d 43, 47 (2d Cir. 1989)). In this case, Hearing Officer Wiley was not involved in the underlying incidents, and the undisputed facts show that she allowed Dobbins to state his version of facts on the record, considered the available documentary evidence, and questioned Dobbins's witnesses. (Hearing Tr. 1-21; Disciplinary Disposition Notice). That is, Dobbins's conclusory assertions of Hearing Officer Wiley's bias aside, there is no evidence in the record from which a reasonable jury could conclude that Dobbins was denied his right to an impartial hearing officer. Accordingly, the Court grants Defendants' motion for summary judgment with respect to Dobbins's due process claims, and denies Dobbins's cross-motion as to those claims.

## C. Deprivation of Medical Care

Dobbins's final claim — for deprivation of mental health treatment — requires even less ink. To determine whether allegations of inadequate medical care are sufficient, a court must decide, among other things, "whether the prisoner was actually deprived of adequate medical care" and, if so, "whether the inadequacy in medical care is sufficiently serious." *Salahuddin v. Goord*, 467 F.3d 263, 279-80 (2d Cir. 2006); *see also Darnell v. Pineiro*, 849 F.3d 17, 27 (2d Cir. 2017) (discussing the applicable standards for pretrial detainees). Here, the Court dismissed Dobbins's initial claim for deprivation of mental health treatment on the ground that he failed to identify anyone who was personally involved in the alleged deprivation of mental health care. (Order of Service 4-5). Dobbins repleaded the claim in the Second Amended Complaint, but he failed to remedy that fundamental defect. (*See* Second Am. Compl. 3 (stating only that Dobbins "was sent to the S.H.U. and was den[i]ed mental health for over 70 days")). In any event, the

undisputed facts show that Dobbins did receive both medical treatment and mental health

treatment during this period.  (Docket No. 54-20; Feb. 1, 2014 Medical Records; Feb. 8, 2014

and Feb. 12, 2014 Medical Records; Pl.'s Opp'n 8).  Thus, Defendants' motion for summary

judgment with respect to Dobbins's deliberate indifference claim must be and is granted.

## MOTION FOR LEAVE TO AMEND

In his motion for summary judgment, Dobbins also requests leave to add Captain O'Hara,

the supervisor during the events described above, as a defendant.  (Pl.'s Mem. 1-2).  Although

leave to amend a complaint should be freely given "when justice so requires," Fed. R. Civ. P.

15(a)(2), Dobbins's request is denied, for two independent reasons.  First, this case is now all but

trial ready, and adding claims against Captain O'Hara would cause undue delay.  Furthermore,

Dobbins provides no good reason for not seeking to add claims against Captain O'Hara earlier in

the case.  Defendants identified Captain O'Hara as a witness to the incidents in question, and

provided Dobbins with a copy of his witness report, as far back as March 2016.  Yet, Dobbins

inexplicably waited more than seven months, until discovery had closed and Defendants had

filed their summary judgment motion, before proposing to add Captain O'Hara as a defendant.

*See, e.g.*, *Rodriguez v. Kittles*, No. 92-CV-1154 (SHS), 1996 WL 14442, at *2 (S.D.N.Y. Jan. 16,

1996) ("Permitting plaintiff to amend his complaint while the summary judgment motion is

pending and on the eve of trial would be unduly prejudicial to the defendant."); *see also, e.g.*,

*Antrobus v. N.Y.C. Dep't of Sanitation*, No. 11-CV-5434 (CBA) (LB), 2016 WL 5394697, at *11

(E.D.N.Y. Feb. 25, 2016) ("Prejudice is generally found where the motion to amend comes on

the eve of trial after many months or years of pre-trial activity; the amendment would cause

undue delay in the final disposition of the case; the amendment brings entirely new and separate

claims, adds new parties or at least entails more than an alternate claim or a change in the allegations of a complaint." (internal quotation marks omitted)).

Second, and in any event, Dobbins provides no indication that he possesses facts with which he could allege valid claims against Captain O'Hara. *See, e.g.*, *Rodriguez*, 1996 WL 14442, at *2 (denying a motion for leave to add claims against two new defendants on the eve of trial where the plaintiff failed to "attach a copy of his proposed amended complaint to his declaration" and failed to "provide any grounds to suggest that plaintiff would even have a viable claim against" the two new defendants); *Hays v. City of New York*, No. 14-CV-10126 (JMF), 2017 WL 782496, at *8 (S.D.N.Y. Feb. 28, 2017) (denying leave to amend where the *pro se* plaintiff had not "given any indication" that she was "in possession of facts" that would state a valid claim (internal quotation marks omitted)). The video of the February 1, 2014 incident shows that Captain O'Hara was walking upstairs during the time that Officers Rivera and Ortiz were allegedly assaulting Dobbins in his cell. (Video 19:26-20:08). And Dobbins does not suggest that Captain O'Hara participated in the alleged assault in the intake unit or had a "realistic opportunity to intervene" in what is alleged to have been only a brief and unprovoked attack by Officer Richardson. *Holland*, 197 F. Supp. 3d at 549-50 (describing the elements of a failure-to-intervene claim).[6]

## CONCLUSION

For the foregoing reasons, Dobbins's motions for summary judgment and leave to amend the Second Amended Complaint are DENIED in their entirety, and Defendants' motion for

---

[6]     Liberally construed, Dobbins's motion could also be read to propose adding a claim or claims relating to the drugs found near his cell, which he disputes. (Pl.'s Mem. 3-4). Any such claim, however, would be barred by *Heck v. Humphrey*, 512 U.S. 477, 486-87 (1994), as Dobbins pleaded guilty to charges stemming from those drugs.

summary judgment is GRANTED in part and DENIED in part.  In particular, Defendants'

motion is granted with respect to Dobbins's deliberate indifference claim, his due process claims,

and his excessive force (and assault and battery) claim to the extent it is based on Defendants'

alleged conduct when Dobbins was escorted from his cell to the intake unit.  By contrast,

Defendants' motion and Dobbins's cross-motion are denied with respect to the excessive force

claims relating to the conduct in Dobbins's cell and in the intake unit.

In light of the substance of Dobbins's surviving claims and the need for trial to resolve

them, this Court exercises its discretion under Title 28, United States Code, Section 1915(e)(1),

and will seek to obtain *pro bono* counsel for Dobbins.  *See Cooper v. A. Sargenti Co.*, 877 F.2d

170, 174 (2d Cir. 1989).  Further, the Court believes — in light of this ruling; the possibility that

Dobbins will obtain counsel in short order; and the fact that, all things considered, Dobbins's

injuries were relatively minor — that the parties should attempt to settle the case without the

need for trial.  To that end, by separate Order to be entered today, the Court is referring the case

to the assigned Magistrate Judge (the Honorable James L. Cott) for settlement purposes only.

**No later than one week after *pro bono* counsel enters a notice of appearance or September

15, 2016, whichever is earlier**, the parties shall contact the Chambers of Magistrate Judge Cott

to schedule a settlement conference as soon as possible.  In the event that the case does not settle,

the Court will issue a further Order with respect to the timing and procedures leading up to trial

(the details of which will depend on whether Dobbins is represented or not).

The Clerk of Court is directed to terminate Docket No. 53; to terminate Officer Boyd and

Hearing Officer Wiley (each of whom is named only in claims that have been dismissed) as

Defendants; and to mail Dobbins a copy of this Opinion and Order.

This Court certifies, pursuant to Title 28, United States Code, Section 1915(a)(3), that any appeal from this Order would not be taken in good faith, and *in forma pauperis* status is thus denied. *See Coppedge v. United States*, 369 U.S. 438, 444-45 (1962).

      SO ORDERED.

Dated: August 2, 2017
     New York, New York

                                      JESSE M. FURMAN
                           United States District Judge